Richard A. , Esq. (Bar No. 132945)
THE HUVER LAW FIRM
655 West Broadway, Suite 1400
San Diego, California 92101
619.961.4883
619.961.4886 Fax
rhuver@huverlaw.com

Harris I. Steinberg, Esq. (Bar No. 89288)
5015 Estates Way
El Cajon, California 92020
(619) 787-2650
harrissteinberg@gmail.com

Attorneys for Plaintiffs Plum Healthcare Group, LLC,
    GI Plum Holdco, LLC; and Quince Holdings
    LLC dba Pueblo Springs Rehabilitation Center

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUM HEALTHCARE GROUP, LLC, etc., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ONE BEACON PROFESSIONAL INSURANCE, etc., et al., <br><br> Defendants. | CASE NO. 15CV2747W MDD <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; PLAINTIFFS' STATEMENT OF DISPUTED AND UNDISPUTED FACTS** <br><br> (Memorandum of Points and Authorities; Objections To and Motion To Strike Evidence; Declaration of Richard A. Huver; Declaration William Wilson; submitted concurrently.) <br><br> Date: April 24, 2017 <br><br> Judge Thomas J. Whelan <br><br> **[NO ORAL ARGUMENT PURSUANT TO LOCAL RULE]** |

Pursuant to Local Rule 7.1(f), plaintiffs respond to defendants OneBeacon Professional Insurance and Homeland Insurance Company of New York's statement of undisputed material facts in support of their motion for summary judgment or partial summary judgment.

**UNDISPUTED FACTS AND EVIDENCE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Plaintiff's Response and Supporting Evidence: |
| --- | --- |
| 1. Homeland Insurance Company of New York ("Homeland") issued a liability insurance policy to Plaintiffs with an inception date of August 4, 2014 (the "Policy"). | 1. Undisputed. |
| 2. The Insuring Agreement of the Policy's "Claims Made General Liability Insurance" section states in pertinent part:<br><br>"The Underwriter will pay up to the applicable Limit of Liability shown in ITEM 4.B. of the Declaration on behalf of the Insured any Loss which the Insured is legally obligated to pay as a result of a covered Claim . . . that is caused by an Occurrence happening on or after the Retroactive Date; provided, that the Claim is first made against the Insured during the Policy Period or applicable Extended Reporting Period and reported to the Underwriter in accordance with GENERAL CONDITION (C) of this Policy." | 2. Plaintiffs do not dispute that The Policy is a "Claims Made" and "Claim Reported" policy containing these terms. |
| 3. The Policy contained a deductible of $250,000 per claim. | 3. Undisputed. |
| 4. The Policy's General Conditions section regarding | 4. Plaintiffs do not dispute the fact that Defendants did not have to pay any combination |

- 2 -

"Limits of Liability" stated in pertinent part:

"The **Insured** shall be responsible for payment in full of the applicable deductible or self-insured retention stated in ITEM 4 of the Declarations, and the Underwriter's obligation to pay **Loss** or **Defense Expenses** under this Policy shall be excess of such deductible or self-insured retention; . . . ."

of Loss/Defense expense until $250,000 of deductible was incurred.  Plaintiffs dispute any argument that a legal defense was not required until then as the Policy requires defendants to immediately undertake the defense upon tender of the claim.  See Defendants' Exhibit (Defs' Ex.") 1, pg. 67, paragraphs (D) and (F).

5.   Each of the Plaintiffs was a named insured.

5.   Undisputed.

6.   The Policy defined "insured" to include "any **Employee** or **Volunteer**, but only when such **Employee** or **Volunteer** is acting within the capacity and scope of his or her duties as such."

6.   Undisputed that for purposes of this liability coverage, an employee is **only** considered to be an "Insured" and entitled to liability coverage if they are (1) a defendant and (2) they were acting in the capacity and scope of their duties when they caused injury to someone else.  However, Ms. Harris was not a defendant, so this portion of The Policy is really irrelevant.  More importantly, Ms. Harris was not an "Insured."

See Defs' Ex. 1, pgs. 46 and 48.

7.   The Policy further provides that "an **Employee's** status as an **Insured** is determined as of the date of the **Occurrence** or **Wrongful Act** upon which a **Claim** involving the **Employee** is based."

7.   Undisputed that for purposes of liability coverage, an employee is only considered to be an "Insured" and entitled to liability coverage if they are (1) a defendant and (2) they were acting in the capacity and scope of their duties when they caused injury to someone else.  However, disputed that this policy provision is intended to define the hour at which an injury occurs for purposes of determining whether Harris was in the course and scope of her

| | | |
|---|---|---|
| 1 | | employment when she was injured.  Ms. Harris was never a defendant so she could not be an "Insured" under the liability coverage. |
| 2 | | |
| 3 | | |

8. The Policy contained three exclusions that read:

Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay any **Loss** or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:

* * *

(2) act, error, omission, **Occurrence**, **Wrongful Act**, event, suit or demand which was the subject of any notice given under any other policy of insurance or plan or program of self-insurance in effect prior to the Inception Date as set forth in ITEM 2 of the Declarations; . . .
(5) obligation of an **Insured** pursuant to any workers' compensation, unemployment compensation, disability benefits or similar law; . . .
(7) **Claim** made by or for the benefit of, or in the name or right of, one current or former **Insured** against another current or former **Insured**; ...

8. Undisputed the Policy read as quoted.  Disputed that defendants ever asserted Exclusion (D)(2) or (D)(5) before this motion for summary judgment.  Disputed that any of the three quoted Exclusions applied to this claim.

Declaration of Richard A. Huver ("Huver Dec., ¶___,") ¶16, and Exhibit 1, Deposition of Daniele Freaner ("Ex. 1, Freaner Dep") at 55:17 - 56:18; 58:24 - 59:12; 137:15 - 138:11; Huver Dec., ¶17 and Exhibit 2, Deposition of Maureen Ringland ("Ex. 2, Ringland Dep"), at 142:24 - 143:7; 144:1-21.

9. In October 2014, Janice Harris sued Plaintiffs for an injury she suffered on October 22, 2013 (the "Accident").

9. Undisputed.

10. In her complaint, Harris alleged she was an Arizona resident and the Director of Nursing for plaintiff Quince Holdings, LLC, one of the nursing homes in the Plum Healthcare network.

10. Undisputed.

| | | |
|---|---|---|
| 11. | In her complaint, Harris alleged that she had traveled to Bishop, California to attend a "budget retreat" organized by her employer Quince and the other Plaintiffs and attended by other senior staff from facilities in the Plum HealthCare network. | 11. | Disputed.  The budget retreat was scheduled for a resort in June Lake, CA.  The stop in Bishop was not for budget retreat purposes.

Defs' Ex. 3, pg. 114, ¶15. Huver Dec., ¶20 and Ex.5, pg. 172. |
| 12. | In her complaint, Harris alleged that during the budget retreat, Plaintiffs organized an off-road vehicle activity as a surprise addition to the "agenda" for the retreat. | 12. | Disputed.  Ms. Harris's complaint alleged the recreational Rhino ATV ride occurred during free-time, was not listed on the approved agenda, and was not part of the budget planning.

Defs' Ex. 3, pg. 114, ¶16, and pg. 115, ¶17.  Huver Dec., ¶18 and Exhibit 4, Deposition of John Romero ("Ex. 4 Romero Dep") at 56:23 - 57:12.  Huver Dec., ¶20 and Ex. 5, pg. 172. |
| 13. | In her complaint, Harris alleged that, while riding in a RHINO off-road vehicle driven by fellow employee Christopher Romney, the vehicle rolled over and Harris was seriously injured. | 13. | Undisputed except for any inference that Harris was an employee within the course and scope of her employment at the time she was injured. Harris specifically alleged she was not in the course and scope of her job duties when she was injured.

Defs' Ex. 3, pg. 116, ¶22. |
| 14. | In her complaint, Harris alleged that, Plaintiffs negligently "organized, planned, and carried out" the off-road vehicle activity, and failed to adequately train or warn Romney how to operate the RHINO safely. | 14. | Undisputed that Harris alleged that all defendants acted negligently, which included the Rhino owner who had no relationship with the Plum entities. |
| 15. | Plaintiffs reported Harris's injury to their workers' compensation carrier, Travelers, on October 25, 2013. | 15. | Undisputed. |

/ / /

| | | | | |
|---|---|---|---|---|
| 16. | Travelers paid Ms. Harris over $100,000 in workers' compensation benefits. | 16. | Undisputed Travelers initially paid Harris's workers comp claim.  Disputed as to whether Travelers was ultimately responsible for paying workers comp benefits or not. | |
| | | | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 68:25 - 69:25; 85:4-9; 91:6-9.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17. | |
| 17. | On or about November 14, 2014, Plaintiffs tendered the defense of the Harris suit to Homeland. | 17. | Undisputed. | |
| 18. | In their tender on or about November 14, 2014, Plaintiffs sent Homeland a copy of the complaint from Harris's lawsuit and materials from Travelers' workers' compensation file. | 18. | Disputed.  The tender of the Harris complaint and other documents was made by Jared Moen of Marsh Risk & Insurance Services.

Freanor Declaration, Paragraph 4, 5, 6. | |
| 19. | The Travelers file showed that Plaintiffs had submitted Harris's claim for compensation under their workers' compensation coverage on October 25, 2013. | 19. | Plaintiffs object to this "fact" on the grounds it is vague and ambiguous as to time. However, without waiving said objection, undisputed a worker comp claim was submitted, disputed as to exactly who submitted the claim. | |
| 20. | The Travelers file also showed that, by November 2014, Travelers had deemed the worker's compensation claim to be "uncontroverted" and had paid Harris benefits exceeding $100,000. | 20. | Plaintiffs' object to the phrase "uncontroverted" as vague, ambiguous and unintelligible in the context of this motion, and assumes facts not in evidence.  Without waiving said objections, disputed.  No evidence exists that Travelers was made aware that Ms. Harris claimed she was outside the course and scope of her job when injured.  Travelers accepted the claim and was not a party to the November 2014 | |

lawsuit Harris filed. Further, there was never a final determination by any workers compensation board or administrative judge adjudicating the issue of Harris' course and scope status. Finally, there is no exclusion in The Policy which precludes a defense if Harris had a pending workers comp claim.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 74:2-11; 85:4-9; 91:6-9; 184:18-22; 185:15-25; 186:23 - 187:10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 83:15 - 84:6; 120:8-11; 124:3-8.

| 21. | Homeland called both Travelers (the workers' compensation carrier) and Plaintiffs' insurance broker, and both confirmed that Harris was receiving workers' compensation benefits for the accident. | 21. | Plaintiffs object to this "fact" on the grounds it is hearsay without exception, is compound and is irrelevant to defendants' duty to defend. However, without waiving said objections, undisputed that Homeland had information that Harris was receiving workers comp benefits. However, defendants never asked Travelers whether Harris was or was not in the course and scope of her employment and never advised Travelers Harris had filed a lawsuit alleging she was not in the course and scope of employment. Finally, there is no exclusion in The Policy which precludes a defense if Harris had a pending workers comp claim. |

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 74:2-11; 85:4-9; 91:6-9; 184:18-22; 185:15-25; 186:23 - 187:10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 83:15 - 84:6; 120:8-11; 124:3-8.

| | | |
|---|---|---|
| 22. | On November 19, 2014, Homeland told plaintiff Plum and Plaintiffs' insurance broker that it concluded the claim was not covered because, based on the workers' compensation involvement, the insured vs. insured exclusion applied. | 22. Undisputed that defendants denied plaintiffs a defense. Disputed that defendants' position was correct.<br><br>See Plum's Separate Statement of Disputed and Undisputed Facts ("PSSF No. ___"), Nos. 4-6, 8, 9-18, 22-36, 53-54, 78-105. |
| 23. | Neither Plum nor Plaintiffs' broker told Homeland that it was mistaken about any facts or that it owed a defense. | 23. Plaintiffs object to this "fact" as compound and vague and ambiguous.  Without waiving said objections, disputed. Plaintiffs repeatedly advised defendants they owed a defense against the Harris lawsuit.<br><br>Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 135:3-15; 135:25 - 137:14; 139:3 - 140:7.  Defs' Ex. 6, pgs. 153-154. |
| 24. | On December 9, 2014, Homeland sent Plaintiffs a letter (i) explaining the basis for its coverage determination, (ii) reserving its rights to rely on other policy provisions, and (iii) asking Plaintiffs to "advise us of any information that you have that you believe may affect our determination concerning coverage available under the Homeland policy." | 24. Undisputed defendants sent the letter.  Disputed the basis for denying plaintiffs' claim was reasonable or proper. Moreover, the denial letter fully articulated defendants' positions as to the claim and asserted only Exclusion (D)(7), defendants denied any coverage and consciously decided not to defend under a reservation of rights, thereby waiving any other rights it may have had.<br><br>Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 55:17 - 56:18; 58:24 - 59:12; 121:6-12; 121:21 - 122:6; 156:5-19. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 44:13-17; 142:24 - 143:7; 144:1-21; 178:4-24. |

/ / /

| | | |
|---|---|---|
| 25. | Homeland heard nothing further from Plaintiffs until February 16, 2015, when it received a letter from Plum Healthcare's president Toby Tilford. | 25. Undisputed. |
| 26. | Tilford's letter did not provide any new facts, but asserted that Harris's allegation in paragraph 22 that she was not in the course and scope of employment was sufficient to trigger the duty to defend. | 26. Undisputed that Plum made it clear that Harris could not be an "Insured" if she was outside the course and scope of her duties, as she alleged.<br><br>Defs' Ex. 6, pgs. 153-154. |
| 27. | Homeland immediately acknowledged the letter and hired independent coverage counsel, Marc Shrake of Anderson, McPharlin & Conners, to help evaluate coverage. | 27. Disputed as to the word "immediately." Undisputed that Marc Shrake acted solely for defendants' interests as an advocate. Moreover, defendants are not relying on the advice of counsel as a defense and therefore, Mr. Shrake's involvement is irrelevant.<br><br>See Plaintiffs' Objections to Evidence, pg. 4, and Docket No. 19. |
| 28. | On March 20, 2015, Shrake sent a letter to Tilford responding to his argument based on paragraph 22 and concluding that the complaint did not trigger a duty to defend. | 28. Undisputed that Mr. Shrake sent a letter dated March 20, 2015. Disputed that it responded to plaintiffs' request to defend them against the Harris lawsuit. Disputed that the duty to defend was not triggered. Moreover, defendants are not relying on the advice of counsel as a defense and therefore, Mr. Shrake's involvement is irrelevant.<br><br>See Plaintiffs' Objections to Evidence, pg. 4, and Docket No. 19. |

/ / /

/ / /

/ / /

29. On May 11, 2015, Homeland spoke with Tilford and Paul Hubbard – the co-CEO of Plum Healthcare.  Hubbard stated that Harris (i) was an employee at the time of the accident, (ii) was expected to be at the budget retreat as part of her employment, and (iii) was paid for her attendance.

29. Undisputed a conversation took place on May 11, 2015. Disputed that Ringland asked or that Hubbard told Ringland that Harris was an "Insured" at the time of the accident per the terms of The Policy, or that Harris was "expected" to ride the ATVs or shoot guns during her free time.  Also disputed that Plum was asked if Harris was an "Employee" at the time of the accident.  Defendants only asked if Harris was an employee but ignored the course and scope question they now admit was critical.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 71:9-25; 72:23 - 73:25.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 184:25 - 185:7; 186:8-12.

30. Homeland heard nothing further from Plaintiffs until early June 2015, when it received a letter from Plaintiffs' coverage counsel, William Pruitt of Kirkland & Ellis.

30. Plaintiffs object to this "fact" as irrelevant.  Defendants refused to defend plaintiffs against the Harris lawsuit, despite repeated requests. Plaintiffs had no duty to continue to request that defendants comply with their legal and contractual obligations and defend them against Ms. Harris's lawsuit.

31. On June 25, Shrake responded to Pruitt's letter stating that (i) he disagreed with Pruitt's legal analysis, but (ii) Homeland was willing to meet with him and Plaintiffs to try to resolve the dispute.

31. Undisputed that Mr. Shrake sent a letter dated June 25, 2015.  Disputed that it responded to plaintiffs' request to defend them against the Harris lawsuit.  Disputed that the duty to defend was not triggered.  Moreover, defendants are not relying on the advice of counsel as a defense and therefore, Mr. Shrake's involvement is irrelevant.

See Plaintiffs' Objections to Evidence, pg. 4, , and Docket No. 19.

| | | | | |
|---|---|---|---|---|
| 1 | 32. | On July 21, 2015, the parties met as Shrake had proposed. The parties, however, were unable to reach agreement as to the duty to defend. | 32. | Undisputed that defendants persisted in refusing to defend plaintiffs. |
| 4 | 33. | On August 4, 2015, Shrake sent a letter to Pruitt pointing out cases that he felt supported the conclusion that Homeland owed no duty to defend. | 33. | Plaintiffs object to this "fact" on the grounds it calls for speculation as to the state of mind of Shrake.  However, without waiving said objection, undisputed that Shrake sent the letter relying on inapposite cases to support defendants' wrongful denial of plaintiffs' claim and that Mr. Shrake refused to concede what Homeland "admits" it always knew: that if Harris's allegations were correct, she would not be an "Insured" and she could therefore recover damages; that Homeland knew Harris's allegations were disputed, unproven and inconclusive either way. Moreover, defendants are not relying on the advice of counsel as a defense and therefore, Mr. Shrake's involvement is irrelevant. |

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 68:25 - 69:25; 85:4-9; 96:18 - 97:13; 101:14-25; 103:8-14; 106:10-24; 109:5-10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 96:1 - 98:9; 101:12 - 102:8; 106:12 - 107:9; 109:7 - 110:1; 126:14-25; 130:2-9; 182:7 - 183:2. See also Plaintiffs' Objections to Evidence, pg. 4, and Docket No. 19.

| | | | | |
|---|---|---|---|---|
| 24 | 34. | Plaintiffs admit that Homeland was "professional" and "respectful" throughout the claim handling process. | 34. | Plaintiffs object to this "fact" on the grounds it is misleading and irrelevant. |

/ / /

/ / /

15CV2747W MDD

| | | |
|---|---|---|
| 35. | In the litigation with Harris, Plaintiffs admitted in discovery responses that "Harris was on a work-related event at all times relevant to the subject litigation" and that her injuries "arose out of and in the course of her employment." | 35. Plaintiffs object to these "facts" on the grounds they are irrelevant to the issue of the duty to defend, which is based on the information defendants knew at the time of the denial. Defendants never knew or relied on events that occurred during the litigation, which was long after they denied Plaintiffs' claim. ***See North Counties Engineering v. State Farm*** (2014) 224 Cal.App.4th 902, 909.  Further, plaintiffs object to the word "admitted" on the grounds it is argumentative. Without waiving said objections, is it undisputed that after defendants refused to defend Plum against the Harris lawsuit, Plum asserted as one of several affirmative defenses that Ms. Harris's exclusive remedy was workers compensation, which she disputed.  The affirmative defenses raised by plaintiffs after being denied a defense of the Harris lawsuit are not conclusive proof. |
| 36. | The budget retreats, like the one at which Harris was injured, were an annual event. | 36. Plaintiffs object to this "fact" on the grounds it is vague, ambiguous and irrelevant.  As the incident occurred during Harris's first "budget retreat," what did or did not happen at any prior "annual budget retreat" is irrelevant.  FRE 402, 403.  However, without waiving said objections, disputed.  Harris's complaint alleged the afternoon was for free-time, did not involve budget-related work, the retreat was scheduled for a resort in June Lake, CA, not Bishop, and the Rhino ATV riding was not part of her job duties and responsibilities.<br><br>PSSF Nos. 55, 57, 61. |

| 37. | The retreats were mandatory for invitees, including Harris. | 37. | Plaintiffs object to this "fact" on the grounds the word "mandatory" is vague and ambiguous, and on the ground the "fact" as phrased is misleading. Moreover, reference to any prior "annual budget retreat" is inadmissible evidence. FRE 402, 403. Without waiving said objections, undisputed that attendance at budget meetings was required. Disputed that recreational activities were required.

Huver Dec., ¶18 and Ex. 3, Romero Dep, at 34:21 - 35:4; 39:17-25; 45:19- 46:8; 56:23 - 57:12; 73:24 - 74:12; 74:13-19; 109:6-25. |
| 38. | The purpose of the retreat at which Harris was injured was to present each facility's budget, to participate in teambuilding, to collaborate with peers, and receive training and education. | 38. | Undisputed that was Mr. Romney testified to in deposition. Also undisputed the purpose of the retreat was to work on budgeting, not to ride ATVs or shoot guns.

Huver Dec., ¶18 and Ex. 3, Romero Dep, at 34:21 - 35:4; 35:5-10; 39:17-25; 45:19- 46:8; 56:23 - 57:12; 73:24 - 74:12; 74:13-19; 109:6-25. |
| 39. | The RHINO activity was part of the teambuilding agenda. | 39. | Disputed. Harris alleged the Rhino ATV activity was not part of her job duties or responsibilities as DON. The ATV riding was a last-minute, surprise change made by Craig Clayton without permission and was not part of the planned agenda. The budget retreat was scheduled for June Lake, CA, not Bishop, CA. Undisputed riding ATVs was not within Harris's job duties and responsibilities as DON. This issue remained in dispute during and was never resolved in the Harris litigation. |

- 13 -

15CV2747W MDD

|   |   |   |
|---|---|---|
| | | Defs' Ex. 3, pg. 114, ¶15-16, pg. 115, ¶17, pg. 116, ¶22. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 101:12 - 102:8; 184:25 - 185:7; 186:8- 12.  Huver Dec., ¶18 and Ex. 3, Romero Dep, at 45:19 - 46:8; 56:23 - 57:12; 73:24 - 74:12; 74:13-19; 109:6-25. |
| 40. | Upon being informed of the RHINO activity, Harris said she did not want to participate in it, but she felt compelled to do so. | 40.  Plaintiffs object to this "fact" on the grounds the evidentiary support is hearsay without exception.  FRE 802, 803, 804. |
| 41. | The Industrial Commission of Arizona twice made findings that Harris "sustained a compensable injury by accident arising out of and in the course of employment on 10/22/2013." | 41.  Plaintiffs object to this alleged "fact" on the grounds it is irrelevant to the duty to defend issue. The documents are dated April 21, 2015, 5 months **after** Homeland's initial denial.  Therefore, these were not "known" by or relied on by Homeland **before** they denied coverage.  Homeland admitted it only relied on 5 pieces of paper from a Travelers' workers comp file as the basis for its denial.

Moreover, there were no legal "findings" and no adjudication by any workers compensation court as to Harris's course and scope status.  Plaintiffs further object to the term "findings" as lacking foundation, assuming facts not in evidence, and hearsay on the subject of determining the legal question of whether Harris was an "Insured" under defendants' policy.  FRE 602, 701, 702, 802, 803, 804. Without waiving said objections, disputed. Defendants admit there was no evidence in the 5 pieces of paper from Travelers at the time the claim was denied which conclusively determined Harris's status re course and scope. |

| | | | | |
|---|---|---|---|---|
| 1 | | | | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 68:25 - 69:25; 85:4-9; 86:20 - 87:9; 91:6-9; 96:18 - 97:13; 101:14-25; 103:8-14; 106:10-24; 109:5-10; 181:22 - 182:1; 184:4-17; 184:18-22; 185:15-25; 186:23 - 187:10.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 94:5-18. |

42.   In November 2015, Plaintiffs and Harris settled for $775,000 plus an agreement by Plaintiffs to pay a portion of the workers' compensation insurer's liens.

42.   Undisputed that after defendants refused to defend or indemnify Plum, they reached a settlement to avoid potential liability in excess of $4,000,000, potential exposure on multiple cross-complaints, and additional legal expenses of at least $200,000.

Declaration of William Wilson ("Wilson Dec., ¶__,"), ¶4-9.

43.   Plaintiffs moved for a determination of good faith settlement.

43.   Undisputed.

44.   In moving for a good faith determination, Plaintiffs argued that the settlement as within the *Tech-Bilt* "ballpark" because (i) Harris was an employee, (ii) the injury occurred during a "corporate team building activity" during an "organized budget retreat," and (iii) therefore, workers' compensation was Harris' exclusive remedy.

44.   Undisputed Plum referenced various affirmative defenses raised in the Harris lawsuit in support of their motion for a good faith settlement.  Also undisputed the settlement was reached to avoid potential exposure in excess of $4,000,000, potential exposure on multiple cross-complaints, and additional legal expenses of at least $200,000. Disputed that the affirmative defenses somehow equate to conclusive proof of any issue.

Wilson Dec., ¶4-9.

45.   The superior court granted Plaintiffs' motion for a good faith settlement determination.

45.   Undisputed.

| | | | |
|---|---|---|---|
| 46. | In total, Plaintiffs' defense costs during the entirety of the Harris litigation were only about $112,500. | 46. | Undisputed that plaintiffs incurred $112,500 in legal expenses and $825,000 in losses related to the settlement with Ms. Harris and Travelers, for total damages under The Policy of $937,500, plus interest. |

Pursuant to Local Rule 7.1(f)(3), Plum submits the following statement of disputed and undisputed material facts in opposition to Homeland's motion for summary judgment or partial summary judgment.

**DISPUTED/UNDISPUTED FACTS AND EVIDENCE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**ISSUE:** **HOMELAND HAS ADMITTED THE FOLLOWING FACTS BY VIRTUE OF FAILING TO TIMELY RESPOND TO PLUM'S REQUESTS FOR ADMISSION**

| Plaintiffs' Disputed/Undisputed Material Facts and Supporting Evidence: | Defendants' Response and Supporting Evidence: |
|---|---|
| 1.   Janice Harris' injury on October 22, 2013 involved a "non-owned" vehicle.<br><br>Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 1. | 1. |
| 2.   Exclusion (B)(9) did not preclude coverage for the claim made by Janice Harris against your insureds.<br><br>Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 2. | 2. |
| 3.   Homeland was not aware of any available automobile coverage for GI Plum for the claims made by Janice Harris.<br><br>Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 3. | 3. |

| | | |
|---|---|---|
| 1 | 4. Janice Harris' complaint alleged that she was not in the course and scope of her job at the time she was injured on October 22, 2013. | 4. |
| 2 | | |
| 3 | | |
| 4 | Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 4. | |
| 5 | | |
| 6 | 5. If the allegations in paragraph 22 of Janice Harris' complaint were true, she would not have been an "insured" at the time of her injury on October 22, 2013. | 5. |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 5. | |
| 11 | 6. No judge or jury had ever determined if Janice Harris was or was not in the course and scope of her job duties when she was injured on October 22, 2013. | 6. |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 6. | |
| 16 | 7. Homeland Insurance is a wholly owned subsidiary of One Beacon Professional Insurance Company. | 7. |
| 17 | | |
| 18 | | |
| 19 | Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 7. | |
| 20 | 8. Homeland should have provided a legal defense to plaintiffs Plum Healthcare and GI Plum Holdco in the Janice Harris lawsuit. | 8. |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | Huver Dec., ¶12 and Ex. 10, pg. 187, RFA No. 8. | |
| 25 | / / / | |
| 26 | / / / | |
| 27 | / / / | |
| 28 | / / / | |

**ISSUE:     THE FACTUAL ALLEGATIONS IN HARRIS'S LAWSUIT ALLEGED A COVERED CLAIM THAT TRIGGERED HOMELAND'S  DUTY TO DEFEND**

| Plaintiffs' Disputed/Undisputed Material Facts and Supporting Evidence: | Defendants' Response and Supporting Evidence: |
|---|---|
| 9.   The Policy required Homeland to defend Plum against the Harris lawsuit.<br><br>Defs' Ex. 1, pgs. 11, 43-44, 46-48, 51-52, 63.  See also Defs' Separate Statement of Facts ("DSSF"), Nos. 1, 2, 4, 5. | 9. |
| 10.   Plaintiffs herein were Insureds under the terms of The Policy when the Harris lawsuit was tendered for a defense.<br><br>Docket No. 10, Defs' Answer to Complaint, pg. 3, ¶¶ 8, 9, 10, 11. See also DSSF Nos. 1, 2, 4, 5. | 10. |
| 11.   Paragraph 14 of Harris's complaint contained the following specific factual allegation:<br><br>On October 22, 2013, at approximately 5:00 p.m., Plaintiff JAN HARRIS was severely injured while riding as a passenger in a modified Yamaha Rhino side-by-side off-road vehicle (hereinafter the "SUBJECT RHINO") negligently, wantonly and recklessly operated by Defendant CHRISTOPHER ROMNEY.<br><br>Defs' Ex. 1, pg. 114, ¶14. | 11. |

/ / /

/ / /

/ / /

| | | |
|---|---|---|
| 1 | 12. | Paragraph 15 of Harris's complaint contained the following specific factual allegations: | 12. |
| 2 | | |
| 3 | | |
| 4 | | Plaintiff had (sic) travelled to Bishop, California for the purpose of attending a budget retreat organized and arranged by PLUM HEALTHCARE ENTITIES and Defendants ROMNEY, QUINCE, CLAYTON, CLAWSON and the BISHOP CARE CENTER. The location of the planned retreat was at a resort hotel in June Lake, California. ... |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | Defs' Ex. 1, ¶15, pg. 114. |
| 11 | 13. | Paragraph 16 of Harris's complaint contained the following factual allegations: | 13. |
| 12 | | |
| 13 | | "Plaintiff arrived in Bishop, California on the afternoon of October 22, 2013, where she met with the other individuals [sic] travelling to the retreat. After eating a box lunch at Defendants LAWS RAILROAD MUSEUM, all present, including Plaintiff, were supposed to have the afternoon free to shop at stores along Main Street in Bishop.  The agenda for the retreat, which was circulated to attendees beforehand, planned for "shopping along Bishop's Main Street," prior to departing for June Lake. ...for the retreat." |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | Defs' Ex. 3, pg. 114-115, ¶16. |
| 24 | 14. | Paragraph 17 of Harris's complaint contained the following specific factual allegations: | 14. |
| 25 | | |
| 26 | | |
| 27 | | "However, after eating lunch at the LAWS RAILROAD MUSEUM, it was announced to |
| 28 | | |

1
2
3
4
5
6
7
8
9
10

Plaintiff and the other attendees that a surprise change had been made to the agenda.  Plaintiff and the other attendees were driven in vans a short distance to an outdoor location, where a shooting range and several Yamaha Rhino side-by-side off-road vehicles were parked. ... Plaintiff and others were told not to speak with anyone about this surprise change in the agenda, because permission had not been obtained to engage in the shooting and off-road activities. ..."

Defs' Ex. 3, pg. 115, ¶17.

11
12
13

15.   Paragraph 22 of Harris's complaint contained the following specific factual allegation:

14
15
16
17
18
19
20
21

"These events and Plaintiff's severe injuries occurred outside the scope of her employment as QUINCE's director of nursing. The Rhino and shooting activities that occurred on October 22, 2013 were unplanned and unrelated to Plaintiff's work duties as Director of Nursing, but rather involved participation in an off-duty event negligently organized, planned and carried out by Defendants."

Defs' Ex. 3, pg. 116, ¶22.

22
23
24
25
26

16.   The specific factual allegations in Harris' complaint, including paragraphs 14, 15, 16, 17 and 22, **if proven true**, asserted at least a potentially covered claim and therefore triggered Homeland's duty to defend Plum.

27
28

Defs' Ex. 1, pgs. 11, 43-44, 46-48, 51-52, 63. Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 62:16

15.

16.

| | | | |
|---|---|---|---|
| 1<br>2<br>3 | | - 63:4; 78:25 - 77:23; 95:23 -<br>96:5; 116:10-14; 149:23 -<br>150:5.  Huver Dec., ¶17 and Ex.<br>2, Ringland Dep, at 29:11-19;<br>154:23 - 155:19. | |
| 4<br>5<br>6 | 17. | Homeland did not know if<br>Harris's allegations in<br>paragraphs 14, 15, 16, 17 and 22<br>were true or false when they<br>denied Plum a defense. | 17. |
| 7<br>8<br>9<br>10<br>11 | | Huver Dec., ¶16 and Ex. 1,<br>Freaner Dep, at 80:20 - 81:19;<br>95:23 - 96:5; 116:10-14; 149:23<br>- 150:5.  Huver Dec., ¶17 and<br>Ex. 2, Ringland Dep, at 96:1 -<br>98:9; 101:12 - 102:8; 106:12 -<br>107:9; 109:7 - 110:1; 126:14-<br>25; 130:2-9. | |
| 12<br>13<br>14 | 18. | Harris's complaint alleging<br>bodily injuries based on claims<br>of negligence against Plum and<br>others was a covered claim. | 18. |
| 15<br>16 | | Huver Dec., ¶17 and Ex. 2,<br>Ringland Dep, at 154:23 -<br>155:19. | |
| 17<br>18<br>19<br>20<br>21 | 19. | Plum Healthcare Group, LLC,<br>incurred $112,500 in attorneys<br>fees and costs to defend against<br>the Harris v. Plum Healthcare<br>Group, LLC, et al., lawsuit.<br><br>Wilson Dec., ¶10, and Ex. 6,<br>pgs. 6-62. | 19. |
| 22<br>23<br>24<br>25<br>26 | 20. | The Policy's $250,000<br>deductible applied to the<br>combined legal defense<br>expenses of $112,500, and the<br>$825,000 settlement under the<br>indemnity coverage for<br>"Losses." | 20. |
| 27 | | Defs' Ex. 1, Section<br>IV(A)(7)(a), pgs. 64-65. | |
| 28 | /// | | |

21.  Homeland's obligation to indemnify a "Loss" is in excess of $250,000, but the duty to defend is triggered immediately upon tender of a claim or a potentially covered claim.

Defs' Ex. 1, Section I(F), pg. 44 and Section IV(A)(7)(a), pgs. 64-65.

21.

**ISSUE:       THE 5 PIECES OF PAPER FROM TRAVELERS' WORKERS COMPENSATION FILE DID NOT CONCLUSIVELY ESTABLISH HARRIS WAS IN THE COURSE AND SCOPE OF HER JOB DUTIES WHEN INJURED**

**Plaintiffs' Disputed/Undisputed Material Facts and Supporting Evidence:**

**Defendants' Response and Supporting Evidence:**

22.  The only "extrinsic" documents Homeland relied on to deny Plum a defense were the 5 pieces of paper from Travelers' file which merely showed Harris had received some benefits from an open workers comp claim.

Huver Dec., ¶16 and Ex. 1, Freaner Dec, at 86:20 - 87:9; 181:22 - 182:1; 184:4-17. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 94:5-18.

22.

23.  When Homeland denied Plum a defense, they knew Harris had not hired an attorney to represent her for her workers comp claim.

Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 91:14 - 92:13.

23.

24.  The 5 pieces of paper from Travelers' workers comp file did not conclusively negate the possibility that Harris's complaint alleged a potentially covered claim.

24.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 85:4-9; 91:6-9; 184:18-22; 185:15-25; 186:23 - 187:10.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 94:5-18.

25. None of the 5 pieces of paper from Travelers' workers comp file indicated a legal adjudication had been made that Harris was in the course and scope of her job duties when she was injured.

25.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 184:18-22; 185:15-25; 186:23 - 187:10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 94:5-18.

26. Homeland did not have any information that a formal determination had been made by any workers comp judge or appeals board that Harris was in the course and scope of her job duties when they denied Plum's claim for a defense.

26.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 68:25 - 69:25; 85:4-9; 91:6-9; 184:18-22; 185:15-25; 186:23 - 187:10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17.

27. Homeland never informed Travelers that Harris had filed a civil lawsuit alleging she was **not** within the course and scope of her job duties.

27.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 74:2-11. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 83:15 - 84:6.

/ / /

15CV2747W MDD

28. There is no exclusion in The Policy which negates coverage just because Harris was pursuing both a workers comp claim and a civil lawsuit.

Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 120:8-11; 124:3-8.

28.

**ISSUE:** **HOMELAND DID NOT CONCLUSIVELY ESTABLISH THE "INSURED V. INSURED" EXCLUSION (D)(7) NEGATED COVERAGE. HARRIS'S COURSE AND SCOPE ISSUE WAS IN DISPUTE WHEN HOMELAND REFUSED TO DEFEND PLUM**

**Plaintiffs' Disputed/Undisputed Material Facts and Supporting Evidence:**

**Defendants' Response and Supporting Evidence:**

29. The only policy exclusion Homeland relied on to deny Plum a defense was the "Insured v. Insured" Exclusion (D)(7).

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 121:6-12; 121:21 - 122:6; 137:15 - 138:11. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 142:24 - 143:7; 144:1-21; 178:2-24. Defs' Ex. 5, pgs. 147-151.

29.

30. Homeland knew Exclusion (D)(7) would **only** apply if Harris was an "Insured" as defined by The Policy, requiring that she was both (1) an "Employee" **and** (2) "**only when such Employee ... is acting within the capacity and scope of his or her duties as such;...**"

Defs' Ex. 1, Section II, Definitions (T)(2), pgs. 47-48. (Emphasis added.) Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 78:6-15; 94:25 - 95:22; 95:23 - 96:5; 113:15 -

30.

114:4; 116:10-14; 123:6-19;
124:9-20; 126:2-9; 149:23 -
150:5.  Huver Dec., ¶17 and
Ex. 2, Ringland Dep, at 103:8-
23; 104:11-15; 105:21 - 106:4.

31.  Homeland knew if Harris's
allegations in her complaint,
including paragraphs 14, 15,
16, 17 and 22, were true,
Harris would not be an
"Insured" under the terms of
the Policy and the "Insured v.
Insured" Exclusion (D)(7)
would not negate coverage.

31.

Huver Dec., ¶16 and Ex. 1,
Freaner Dep, at 78:6-15; 94:25
- 95:22; 95:23 - 96:5; 116:10-
14; 123:6-19; 124:9-20;
126:2-9; 149:23 - 150:5.
Huver Dec., ¶17 and Ex. 2,
Ringland Dep, at 103:9-23;
104:11-15; 105:21 - 106:4.

32.  Homeland knew Exclusion
(D)(7) did not apply just
because Harris was receiving
workers comp benefits.

32.

Huver Dec., ¶16 and Ex. 1,
Freaner Dep, at 123:6-19;
124:9-20; 126:2-9.  Huver
Dec., ¶17 and Ex. 2, Ringland
Dep, at 120:8-11; 124:3-8.

33.  The only documents which
Homeland relied on for
asserting the "Insured v.
Insured" Exclusion (D)(7)
were the 5 pieces of paper
from Travelers' workers
compensation files.

33.

Huver Dec., ¶16 and Ex. 1,
Freaner Dep, at 86:20 - 87:9;
181:22 - 182:1; 184:4-17.

/ / /

/ / /

| | | | |
|---|---|---|---|
| 1 | 34. | Homeland based its entire decision to deny Plum a defense on the 5 pieces of paper from the Travelers file. | 34. |
| 2 | | | |
| 3 | | | |
| 4 | | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 86:20 - 87:9; 181:22 - 182:1; 184:4-17. | |
| 5 | | | |
| 6 | 35. | No judge or jury had decided that Harris was in the course and scope of her job duties and responsibilities when she was injured when Homeland denied Plum's claim. | 35. |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | Huver Dec., ¶16 and Ex. 1, Freaner Dec, at 68:25 - 69:25; 85:4-9; 96:18 - 97:13; 101:14-25; 103:8-14; 106:10-24; 109:5-10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 182:7 - 183:2. | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | 36. | At the time Homeland denied Plum's claim for a defense, Homeland had not "conclusively established" that Exclusion (D)(7) precluded coverage for the claim. | 36. |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 68:25 - 69:25; 78:6-15; 80:20 - 81:19; 94:25 - 95:22; 95:23 - 96:5; 96:18 - 97:13; 101:14-25; 103:8-14; 106:10-24; 109:5-10; 116:10-14; 149:23 - 150:5.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 103:8-23; 104:11-15; 105:21 - 106:4; 112:4-14; 182:7-19. | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | / / / | | |
| 25 | / / / | | |
| 26 | / / / | | |
| 27 | / / / | | |
| 28 | / / / | | |

15CV2747W MDD

**ISSUE:**     **IF HOMELAND IS PERMITTED TO ASSERT NEW COVERAGE DEFENSES, HOMELAND HAS FAILED TO CONCLUSIVELY ESTABLISH EITHER EXCLUSION (D)(2) OR (D)(5) NEGATED HOMELAND'S DUTY TO DEFEND**

| Plaintiffs' Disputed/Undisputed Material Facts and Supporting Evidence: | Defendants' Response and Supporting Evidence: |
|---|---|
| 37.    Homeland contends Exclusion (D)(2) precludes coverage solely because "notice" of Harris's workers comp "claim" was provided to Plum's workers comp insurer Travelers.<br><br>Defs' Motion, pg. 11. | 37. |
| 38.    The Policy does not provide coverage for workers compensation claims.<br><br>Defs' Ex. 1. | 38. |
| 39.    Exclusion (D)(2) does not apply because "notice" of a workers compensation claim has no bearing on The Policy's coverage.<br><br>Defs' Ex. 1. | 39. |
| 40.    Exclusion (D)(2) provides in relevant part:<br><br>"Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Underwriter will not pay **Loss** or **Defense Expenses**, for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged:<br><br>* * *<br><br>   (2) act, error, omission. **Occurrence**, **Wrongful Act**, event, suit or demand which was the subject of any notice given under any other policy | 40. |

of insurance or plan or program of self-insurance in effect prior to the Inception Date set forth in ITEM 2 of the Declarations."

Defs' Ex. 1, pg. 61.

41. "**Claim**" is defined as "any written notice received by an Insured that any person or entity intends to hold an Insured responsible for a **Wrongful Act** or an **Occurrence**."

41.

Defs' Ex. 1, pg. 46.

42. "**Occurrence**" is defined as: "(1) with respect to **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same harmful conditions, which results in injury or damage neither expected nor intended by the Insured; and

42.

(2) with respect to Advertising Injury or Personal Injury, a covered offense as set forth in DEFINITIONS (C) or DEFINITIONS (FF) of this Policy."

Defs' Ex. 1, pg. 51.

43. "**Wrongful Act**," is defined as "any **Professional Services Wrongful Act** or **Employee Benefit Wrongful Act**," neither of which involve a claim for workers compensation benefits or Harris's lawsuit for bodily injuries.

43.

Defs' Ex. 1, pgs. 47, 53-55.

/ / /

/ / /

| | | |
|---|---|---|
| 44. | Harris's workers compensation claim did not involve allegations that Plum was liable for either an **Occurrence** or a **Wrongful Act** as defined by The Policy. | 44. |
| | Defs' Ex. 1, pg. 46, 47, 51, 53-55. | |
| 45. | Exclusion (D)(2) does not apply because the first "written notice" Plum received regarding Harris's bodily injury lawsuit was when they were served with Harris's complaint shortly before tendering the claim for a defense to Homeland. | 45. |
| | Defs' Ex. 3, pgs. 106-130. Freaner Dec., ¶4, 5 and Exs. 2 and 3 thereto. | |
| 46. | The first insurer Plum provided "notice" to of Harris's bodily injury lawsuit was Homeland. | 46. |
| | Freaner Dec., ¶4, 5 and Exs. 2 and 3 thereto. | |
| 47. | The defined terms "**Claim**," "**Occurrence**" and "**Wrongful Act**" do not pertain to or involve Harris's claim for workers compensation benefits. | 47. |
| | Defs' Ex. 1, pgs. 46, 51, 61. | |
| 48. | Exclusion (D)(2) does not apply by its own terms because Harris's lawsuit sought damages for bodily injuries, not workers compensation benefits. | 48. |
| | Defs' Ex. 1, pgs. 46, 51, 61. | |

/ / /

/ / /

15CV2747W MDD

49. Harris's lawsuit for bodily injuries did not involve a claim for a "**Professional Services Wrongful Act**" or an "**Employee Benefit Wrongful Act**" as those terms are defined in The Policy.

49.

Defs' Ex. 1, pgs. 47, 53-55. Defs' Ex. 3, ¶21, pg. 116; ¶29, pg. 118; and ¶31, pg. 119.

50. When Homeland denied Plum's claim, even though claims adjuster Freaner and claims manager Ringland discussed Exclusion (D)(5), the only exclusion they agreed might apply was the "Insured v. Insured" Exclusion (D)(7).

50.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 55:17 - 56:18; 58:24 - 59:12 121:6-12; 121:21 - 122:6; 137:15 - 138:11. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 142:24 - 143:7; 144:1-21. Defs' Ex. 5, pgs. 147-151.

51. By its specific terms, the "Workers Compensation" Exclusion (D)(5) does not apply to this claim because Harris's lawsuit sought damages for bodily injuries, not benefits for a workers compensation claim.

51.

Defs' Ex. 1, pgs. 46, 51, 61. Defs' Ex. 3, pgs. 106-130.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**ISSUE:**       **IF HOMELAND IS PERMITTED TO LITIGATE THE ISSUE OF HARRIS'S COURSE AND SCOPE FOR PURPOSES OF DETERMINING ITS DUTY TO INDEMNITY PLUM, HOMELAND HAS FAILED TO MEET THEIR BURDEN OF CONCLUSIVELY ESTABLISHING THAT ANY POLICY EXCLUSION PRECLUDED COVERAGE. THEREFORE, HOMELAND IS REQUIRED TO INDEMNIFY PLUM FOR THE FULL AMOUNT OF THE HARRIS SETTLEMENT**

| Plaintiffs' Disputed/Undisputed Material Facts and Supporting Evidence: | Defendants' Response and Supporting Evidence: |
|---|---|
| 52.    Plum refers to and incorporates herein by reference PSSF Nos. 1-51 and all supporting evidence. | 52. |
| 53.    No court has ever ruled as a matter of law that Janice Harris was acting within the course and scope of her job duties and responsibilities as DON for Pueblo Springs when she was injured.<br><br>Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 68:25 - 69:25. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 182:7 - 183:2. | 53. |
| 54.    No jury ever rendered a verdict finding that Janice Harris was acting within the course and scope of her job duties and responsibilities as DON for Pueblo Springs when she was injured.<br><br>Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 68:25 - 69:25; 85:4-9; 96:18 - 97:13; 101:14-25; 103:8-14; 106:10-24; 109:5-10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 182:7-19. | 54. |

/ / /

/ / /

| | | |
|---|---|---|
| 1 | 55. | Janice Harris had been the Director of Nursing for Pueblo Springs for about 6 months when she was notified about the June Lake budget retreat. | 55. |

55. Janice Harris had been the Director of Nursing for Pueblo Springs for about 6 months when she was notified about the June Lake budget retreat.

Huver Dec., ¶19 and Ex. 4, Deposition of Janice Nargi (formerly Janice Harris) ("Nargi Dep."), at 70:7-9.

55.

56. John Romero was the Facility Rehabilitation Director for Pueblo Springs at the time of the June Lake budget retreat.

Huver Dec., ¶18 and Ex 3, Romero Dep, at 12:11-24.

56.

57. Harris's job duties and responsibilities as DON did not include planning for the budget retreat.

Huver Dec., ¶18, and Ex. 3, Romero Dep, at 26:23 - 28:7.

57.

58. Harris's job duty as DON was having full responsibility for the nursing department at Pueblo Springs, including providing social services and activities for the patients.

Huver Dec., ¶19 and Ex. 4, Nargi Dep., at 30:15-19.

58.

59. The purpose for the June Lake budget retreat was to set the 2014 budget for Pueblo Springs, see where things stood at the Pueblo facility and set goals for 2014.

Huver Dec., ¶18 and Ex. 3, Romero Dep, at 35:5-10.

59.

/ / /

/ / /

/ / /

| | | | |
|---|---|---|---|
| 1 | 60. | The printed agenda for the June Lake budget retreat was sent to Harris and Romero shortly before the retreat, and did not mention riding ATVs or shooting guns as planned activities. | 60. |

Defs' Ex. 1, pgs. 114-115, ¶16.  Huver Dec., ¶18 and Ex. 3, Romero Dep, at 29:10-13; 30:9-24; 31:7-25; 32:3-5. Huver Dec., ¶20 and Ex. 5, pg. 172.

61.  The June Lake budget retreat was the first budget retreat Harris had attended.                 61.

Huver Dec., ¶18 and Ex. 3, Romero Dep, at 34:21-35:4.

62.  The budget retreat had been allegedly negligently planned and organized by Bishop Care Center and Plum Healthcare Group, LLC.                 62.

Defs' Ex. 1, pg. 114, ¶15.

63.  Janice Harris was not an employee of either Bishop Care Center or Plum Healthcare Group, LLC.                 63.

Huver Dec., ¶19 and Ex. 4, Nargi Dep, at 30:7-19.

64.  Harris understood that after they had lunch in Bishop, she was supposed to have the afternoon off for free time before leaving for the budget retreat which was being held at a resort hotel in June Lake, CA.                 64.

Huver Dec., ¶19 and Ex. 4, Nargi Dep, at 139:16 - 140:12; 141:2 - 142:1.  Defs' Ex. 3, pgs. 114-115, ¶16.

65. However, after lunch, Scott Clawson announced there were surprise activities - a shooting range and Rhino ATVs.

    Huver Dec., ¶18 and Ex. 3, Romero Dep, at 53:2-25; 54:21-25; 56:8-22.  Defs' Ex. 3, pgs. 114-115, ¶¶15, 16.

65.

66. The shooting range and Rhino ATVs were not part of the printed agenda for the June Lake budget retreat.

    Huver Dec., ¶18 and Ex. 3, Romero Dep, at 56:23 - 57:12. Huver Dec., ¶20 and Ex. 5, pg. 172.

66.

67. Harris was not injured at the location where the budget retreat was scheduled to take place - a resort hotel in June Lake - but rather in Bishop.

    Defs' Ex. 1, ¶¶14, 15, 16, 17, 22, pgs. 114-116.

67.

68. Participation in voluntary, recreational activities at Plum's budget retreat was not within the job duties and responsibilities of Janice Harris as the DON.

    Huver Dec., ¶18 and Ex. 3, Romero Dep, at 39:17-25; 45:19 - 46:8; 73:24 - 74:12; 74:13-19; 109:6-25.

68.

69. Generally at Plum budget retreats, any voluntary, recreational or free-time activities that might occur outside of the budget meetings were not mandatory for employees to attend.

    Huver Dec., ¶18 and Ex. 3, Romero Dep, at 39:17-25.

69.

| | | | |
|---|---|---|---|
| 1 | 70. | Harris and others were instructed not to tell anyone about the surprise ATV and gun range activities because they had not been approved. | 70. |
| 4 | | Defs' Ex. 3, pg. 115, ¶17. | |
| 5 | 71. | While riding in the ATV, it rolled over, and Harris suffered injuries to her right leg and ankle, multiple surgeries, incurred significant medical expenses and alleged a significant loss of earnings. | 71. |
| 9 | | Defs' Ex. 3, ¶21, pg. 116; ¶29, pg. 118; and ¶31, pg. 119. Wilson Dec., ¶4, 5. | |
| 11 | 72. | Plum's settlement of the Harris lawsuit occurred after a mediation before a neutral mediator, and was not the product of fraud or collusion. | 72. |
| 14 | | Wilson Dec., ¶9. | |
| 15 | 73. | Homeland was invited to attend the Harris mediation but refused to do so. | 73. |
| 17 | | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 169:8-25; 170:11-25. Wilson Dec., ¶9. | |
| 19 | 74. | Plum Healthcare Group, LLC, paid $775,000 to Janice Harris to settle her bodily injury claims alleged in the Harris v. Plum Healthcare lawsuit only. | 74. |
| 22 | | Wilson Dec., ¶9, 11, and Ex. 7, pg. 63. | |
| 24 | 75. | Plum's settlement of the Harris lawsuit for $825,000 was reasonable.  The case had a potential jury verdict range of $4 - 5,000,000, mounting legal fees, and exposure to multiple cross-complaints. | 75. |
| 28 | | Wilson Dec., ¶4-9. | |

| | | |
|---|---|---|
| 76. | Plum Healthcare Group, LLC, paid $50,000 to Travelers Insurance Company to resolve the workers comp lien claim. | 76. |
| | Wilson Dec., ¶12, and Ex. 8, pgs. 64-65. | |

**ISSUE:     HOMELAND'S REFUSAL TO DEFEND AND INDEMNIFY PLUM AGAINST THE HARRIS LAWSUIT WAS UNREASONABLE AND IN BAD FAITH**

| Plaintiffs' Disputed/Undisputed Material Facts and Supporting Evidence: | Defendants' Response and Supporting Evidence: |
|---|---|

| | | |
|---|---|---|
| 77. | Plum refers to and incorporates herein by reference PSSF Nos. 1-76 and all supporting evidence. | 77. |
| 78. | Homeland intentionally rejected the factual allegations set forth in paragraphs 14, 15, 16, 17 and 22 of Harris's complaint in order to justify its refusal to defend Plum. | 78. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 62:16 - 63:4; 115:8-14; 131:4-14; 143:9 - 144:10.  Huver Dec., ¶23 and Ex. 14, pgs. 202-206, ¶25-32, 36-37, 42-48. | |
| 79. | Homeland never looked for facts that would have supported Harris's allegations that she was outside the course and scope of her job duties. | 79. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 70:15-20; 71:9-25; 72:23 - 73:25; 75:6-24; 75:25 - 77:23.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 96:1 - 98:9; 130:10 - 131:4; 184:25 - 185:7; 186:8-21.  Huver Dec., ¶23 and Ex. 14, pg. 204, ¶36-37. | |

| | | |
|---|---|---|
| 80. | Homeland refused to defend Plum despite knowing they were required to do so even if there was just a "potentially" covered claim for which it might turn out later there was no covered claim. | 80. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 116:19 - 117:2; 117:11-25; 118:14-20; 119:3-6. | |
| 81. | Homeland denied Plum's claim knowing they had **not** conclusively established any exclusion negated coverage. | 81. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 116:19 - 117:2; 117:11-25; 118:14-20; 119:3-6.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 101:12 - 102:8; 103:8-23; 104:11-15; 106:12 - 107:9; 109:7 - 110:1; 130:2-9. | |
| 82. | Homeland claimed it was "confused" by contradictions between Harris's lawsuit and her workers comp claim, but failed to comply with their obligation to resolve doubts about whether facts in Harris's lawsuit triggered their duty to defend in favor of coverage for Plum. | 82. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 63:20 - 64:16; 127:7 - 128:2; 143:9 - 144:10. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 78:8-22; 79:12 - 80:2; 112:4-14. | |
| 83. | Homeland denied Plum's claim for a defense knowing they had no idea what the ultimate outcome would be of either Harris's civil lawsuit or her workers comp claim. | 83. |

| | | |
|---|---|---|
| 1 | | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 150:17-19. |
| 2 | | Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 112:4-14; |
| 3 | | 130:2-9. |
| 4 | 84. | Homeland denied Plum's claim for a defense and relied |
| 5 | | on Exclusion (D)(7) even |
| 6 | | though they did not know whether participating in the |
| 7 | | Rhino ATV activity was within Harris's job duties as |
| 8 | | DON. |
| 9 | | Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 101:12 - |
| 10 | | 102:8; 184:25 - 185:7; 186:8-12. |
| 11 | 85. | Homeland denied Plum's claim for a defense without |
| 12 | | ever asking Plum whether participating in the Rhino |
| 13 | | ATV activity was within |
| 14 | | Harris's job duties as DON. |
| 15 | | Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 101:12 - |
| 16 | | 102:8; 184:25 - 185:7; 186:8-12. |
| 17 | 86. | Homeland denied Plum's claim for a defense, relying |
| 18 | | solely on the "Insured v. |
| 19 | | Insured" Exclusion (D)(7) even they had not conclusively proven |
| 20 | | that Harris was an "Insured." |
| 21 | | Huver Dec., ¶16 and Ex. 1, |
| 22 | | Freaner Dep, at 68:25 - 69:25; 78:6-15; 80:20 - 81:19; 94:25 |
| 23 | | - 95:22; 95:23 - 96:5; 96:18 - 97:13; 101:14-25; 103:8-14; |
| 24 | | 106:10-24; 109:5-10; 116:10-14; 149:23 - 150:5.  Huver |
| 25 | | Dec., ¶17 and Ex. 2, Ringland Dep, at 81:5-17; 103:8-23; |
| 26 | | 104:11-15; 105:21 - 106:4; 112:4-14; 182:7-19. |
| 27 | | |
| 28 | | |

84.

85.

86.

| | | |
|---|---|---|
| 87. | Homeland failed to adequately investigate Plum's claim before denying a defense. | 87. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 70:15-20; 71:9-25; 72:23 - 73:25; 75:6-24; 75:25 - 77:23.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 96:1 - 98:9; 130:10 - 131:4; 184:25 - 185:7; 186:8-21. | |
| 88. | Homeland never contacted anyone at Plum's broker to investigate whether Harris's allegations in her lawsuit that she was outside the course and scope of her job duties were potentially true. | 88. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 70:15-20; 71:9-25. | |
| 89. | Homeland never asked Plum whether Harris's allegations that she was outside the course and scope of her job duties were true or not. | 89. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 71:9-25. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 96:1 - 98:9; 102:9-14; 184:25 - 185:7; 186:8-12. | |
| 90. | Homeland never contacted Harris or her lawyers to investigate whether the complaint's allegations that she was not in the course and scope of her job duties were true or not. | 90. |
| | Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 75:25 - 77:23. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 88:24 - 89:12; 90:21-25. | |

15CV2747W MDD

91. No one at Plum ever told Homeland that Harris was acting within the course and scope of her job duties as DON because Homeland never asked that question.

Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 102:9-14.

91.

92. Homeland ignored Plum's pleas for a defense, rejecting out of hand Plum's CEO's letter pointing to Harris's allegations in her complaint.

Freaner Dec., ¶15-17.  Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 135:3-15; 135:25 - 137:14; 139:3 - 140:7.

92.

93. Homeland rejected Toby Tilford's letter, even though they did not disagree with his position that Harris was not an "Insured."

Huver Dec., ¶16, and Ex. 1, Freaner Dep, at 135:3-15; 135:25 - 137:14; 139:3 - 140:7.

93.

94. Homeland made the decision to deny Plum's request for a defense just 2 days after Daniele Freaner was assigned as the claims adjuster.

Freaner Dec., ¶7, 9, 11.

94.

95. Homeland intentionally asserted the "Owned Auto" Exclusion (B)(9) in answers to interrogatories in this bad faith litigation as support for their decision to deny Plum a defense, even though they knew (B)(9) did not apply.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 55:17 - 56:18; 58:24 - 59:12; 91:10 - 92:13; 93:17-20; 93:21 - 94:11.

95.

15CV2747W MDD

Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 145:13-19; 147:9-19; 152:2-5.  Huver Dec., ¶23 and Ex. 14, expert Reilly report, pg. 204, ¶40.

96.   Homeland recklessly disregarded the allegations in Harris's lawsuit and unilaterally decided the disputed issue of Harris's "course and scope" so they could deny Plum's claim.

96.

Huver Dec., ¶93 and Ex. 1, Freaner Dep, at 115:8-14; 113:4-14.

97.   Homeland was consistently and erroneously focused only on the fact that Harris was an "employee" when she was injured, even though they knew the correct standard required Harris to be an "Insured" in order for Exclusion (D)(7) to apply.

97.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 94:25 - 95:22; 113:15 - 114:7; 123:6-19; 124:9-20; 126:2-9.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 130:10 - 131:4; 139:6 - 140:4; 186:8-24. Huver Dec., ¶23 and Ex. 14, expert Reilly report, pgs. 202-203, ¶25-33.

98.   Homeland knew someone could be an "Employee" and not be an "Insured" but persisted in asserting that Exclusion (D)(7) precluded coverage simply because Harris was an "Employee."

98.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 113:15 - 114:7.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 03:8-23; 104:11-15; 105:21 - 106:4. Huver Dec., ¶23 and Ex. 14, expert Reilly report, pgs. 202-202, ¶25-33.

99.  Homeland recklessly and intentionally insisted that once Harris was an "Employee," she was also an "Insured," even though they knew these defined terms had different meanings.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 95:23 - 96:5; 116:10-14; 149:23 - 150:5; 113:15 - 114:7.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 94:5-18; 103:8-23; 105:21 - 106:4; 130:2-9; 180:5-11.  Huver Dec., ¶23 and Ex. 14, expert Reilly report, pgs. 202-203, ¶25-32.

99.

100.  Although Homeland claimed Harris's civil lawsuit's allegations were "groundless, false or fraudulent," they knew they were still obligated to defend Plum but intentionally refused to do so.

Defs' Ex. 1, Section (I)(F), pg. 44.  Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 115:24 - 116:9.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 153:25 - 154:22.  Huver Dec., ¶23 and Ex. 14, expert Reilly report, pgs. 202-203, ¶25-31.

100.

101.  Homeland consciously and intentionally rejected any notion of defending Plum under a reservation of rights, even though they knew if any doubt regarding coverage existed, doing so was the best way to protect their insured.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 156:5-19.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 37:22 - 39:2; 42:18 - 43:17; 44:13-17.  Huver Dec., ¶23 and Ex. 14, expert Reilly report, pg. 204, ¶38.

101.

102.   Homeland has persisted in refusing to indemnify Plum for the Harris settlement, even though Homeland agrees the issue of whether Harris was in the course and scope of her job duties has never been conclusively established.

102.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 63:20 - 64:16; 68:25 - 69:25; 80:20 - 81:19; 85:4-9; 96:18 - 97:13; 101:14-25; 103:8-14; 106:10-24; 109:5-10; 127:7 - 128:2; 150:17-19.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, 81:5-17; 106:12 - 107:9; 109:7 - 110:1; 130:2-9; 182:7-19. Huver Dec., ¶15 and Ex. 13.

103.   Homeland has persisted in its bad faith refusal to indemnify Plum by raising 2 new exclusions 2 years after denying Plum's claim - (D)(2) and (D)(5) - even though they know these exclusions do not apply.

103.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 137:15 - 138:11.  Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 178:4-24.  Defs' Ex. 5, pgs. 147-151. Docket Nos. 10, 32.  Huver Dec., ¶8, 10, 21.

104.   Homeland's claims adjuster Freaner and claims manager Ringland insist if they had the opportunity to adjust Plum's claim again, they would treat Plum the exact same way and not change one thing they did.

104.

Huver Dec., ¶16 and Ex. 1, Freaner Dep, at 122:11-21. Huver Dec., ¶17 and Ex. 2, Ringland Dep, at 176:5 - 177:4.

15CV2747W MDD

| | |
|---|---|
| 105. Homeland's conduct in denying Plum's claim for a defense was unreasonable, was in total disregard of Plum's interests, put Homeland's interests ahead of Plum's, and demonstrated a lack of proper training and/or supervision. | 105. |
| Huver Dec., ¶23 and Ex. 14, report of expert David Reilly, ¶25-48. | |
| 106. Plum paid an annual premium of $3,125,000 for The Policy. | 106. |
| Defendants' Ex. 1, pg. 12. | |
| 107. Plum owes a 40% contingency attorney fee on any recovery in this case as a result of Homeland's refusal to defend and indemnify them. | 107. |
| Huver Dec., ¶22 and Ex. 12. | |
| 108. Plum is entitled to interest on the $825,000 settlement and the $112,500 in attorneys' fees and costs incurred to defend and settle the Harris lawsuit, totaling at least $92,968.75 as of this date. | 108. |

Respectfully submitted,

THE HUVER LAW FIRM
and
HARRIS I. STEINBERG, ESQ.

DATED: April 10, 2017          By:    /s/ Richard Huver
                                       RICHARD HUVER
                                       Attorneys for Plaintiffs