# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUM HEALTHCARE GROUP, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ONEBEACON PROFESSIONAL INSURANCE, et al.,<br><br>Defendants. | Case No.: 15-CV-02747 W (MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR SUMMARY-ADJUDICATION AS TO PLAINTIFFS' DAMAGES** |

In this insurance-coverage dispute, Plaintiffs Plum Healthcare Group, LLC, GI Plum Holdco, LLC and Quince Holdings LLC dba Pueblo Springs Rehabilitation Center are suing Defendants OneBeacon Professional Insurance and Homeland Insurance Company of New York for breach of contract, and breach of the covenant of good faith and fair dealing (i.e., "bad faith"). The lawsuit arises from Homeland's refusal to defend and indemnify Plaintiffs in an underlying personal-injury lawsuit.

On August 9, 2017, this Court issued an order on the parties' cross-motions for summary adjudication. (*See MSJ Order* [Doc. 61].) The MSJ Order found, among other

1

things: (1) Defendants breached the duty to defend Plaintiffs; (2) Defendants did not have a duty to indemnify Plaintiffs under the policy; and (3) disputed issues of material fact existed regarding whether Defendants breached the duty of good faith and fair dealing by refusing to defend Plaintiffs in the underlying action. (*Id.* 7:16–18, 19:1–4, 21:14–16.) Defendants' motion also sought to establish, assuming they breached the duty to defend, Plaintiffs did not suffer damages because defense expenses in the underlying litigation did not exceed the policy's $250,000 deductible. (*Defs' Notice* [Doc. 41] 2:1–4.) Plaintiffs opposed by arguing the deductible was satisfied because it includes defense expenses and the cost to settle the underlying case. (*Pls' Opp'n* [Doc. 47] 16:23–17:4.)

One problem with Plaintiffs' argument is this Court's finding that Homeland did not have a duty to indemnify under the policy. Because no indemnity is due for the settlement costs, and defense expenses alone are insufficient to satisfy the deductible, Plaintiffs could not have suffered damages under a breach of contract analysis. Accordingly, the MSJ Order acknowledged Defendants' argument appeared meritorious with respect to the breach of contract claim. (*MSJ Order* 22:1–5.) However, because Plaintiffs' breach of the covenant of good faith and fair dealing cause of action survived Defendants' motion, the Court ordered the parties to file supplemental briefs on whether Plaintiffs could still seek damages for bad-faith. (*Id.* 22:10–13.)

The parties have now filed their supplemental briefs. For the reasons that follow, the Court finds (1) Plaintiffs suffered no damages under the breach of contract cause of action, but (2) Plaintiffs may seek recovery of their defense expenses and settlement costs as damages under the breach of the covenant of good faith and fair dealing cause of action.

I. ANALYSIS

    A. **Breach of Contract.**

Defendants argue Plaintiffs suffered no damages from the breach of the duty to defend because defense expenses did not exceed the deductible. (*Defs' P&A* [Doc. 41-1]

16:12–17:4.) In their opposition, Plaintiffs appear to be contending that the $250,000 deductible was satisfied by combining defense expenses and the cost of settling the underlying case. (*Pls' Opp'n* 16:26–27.) Plaintiffs' argument lacks merit.

The MSJ Order found that under the policy's insured v. insured exclusion, Homeland did not have a duty to indemnify Plaintiffs for the settlement. (*MSJ Order* 16:5–19:6.) Because Plaintiffs are not entitled to settlement costs under the policy, those costs cannot be used to satisfy the deductible. See James B. Lansing Sound, Inc. v. National Union Fire Ins. Co., 801 F.2d 1560, 1569 (9th Cir. 1986) (rejecting insured's contention that uncovered losses can be used to satisfy the deductible). Additionally, because it is undisputed that Plaintiffs' defense expenses did not exceed the policy deductible (*Pls' Sep. State.* [Doc. 47-2] Nos. 3, 46), Plaintiffs did not suffer damages under the breach of contract claim.

### B. Bad Faith.

In their supplemental brief, Defendants appear to raise two arguments precluding Plaintiffs from recovering their defense expenses and settlement costs as bad-faith damages. First, they argue that in order "[t]o recover damages on a 'bad faith' theory, 'benefits *due* under the policy must have been withheld." (*Defs' Supp. Brief* [Doc. 63] 4:8–9, citing Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1151 (1990) (italics applied).) "Because no policy benefits ever became due to Plaintiffs, it follows that no damages can be recovered for breach of the duty of good faith and fair dealing." (*Id.* 4:18–21.) Next, Defendants appear to suggest that under Hogan v. Midland National Insurance Company, 3 Cal.3d 553 (1970), Plaintiffs' cannot recover the settlement costs because there is no indemnity obligation. (*Id.* 5:5–7.) Plaintiffs, on the other hand, cite a number of California appellate cases in support of their claim for bad-faith damages. (*Pls' Supp. Brief* [Doc. 62] 1:4–3:28.)

As an initial matter, neither party has cited a California Supreme Court case addressing whether an insured can recover defense expenses or a judgment as damages

for an insurer's bad-faith refusal to defend, where it is ultimately determined that there is no coverage under the policy. Additionally, this Court has been unable to find a case from the State's highest court addressing the issue. The absence of a California Supreme Court case has led to confusion and disagreement among the lower courts regarding the issue. See, e.g., Everett Associates Inc. v. Transcontinental Ins. Co., 159 F.Supp.2d 1196, 1210 (N.D.Cal. 2001) (in finding the insurer was not liable for the settlement of an uncovered claim under breach of contract theory, the court recognized confusion "because where the failure to defend also violates the covenant of good faith and fair dealing, courts have generally held the insurer liable for the full settlement.") For the reasons that follow, the Court finds Plaintiffs may recover their defense expenses and settlement costs as damages, if a jury finds Defendants breached the duty of good faith and fair dealing.

Defendants' first argument—that Plaintiffs cannot recover bad-faith damages because no monies are due under the policy—lacks merit under the facts of this case. In Schwartz v. State Farm Fire and Cas. Co., 88 Cal.App.4th 1329 (2001), the insured, Alan Schwartz, and a guest, Elliot Weinstein, were severely injured in an automobile accident by an uninsured motorist. Schwartz had two insurance policies that included uninsured motorist coverage: a primary policy with USAA with limits of $500,000 per person, and an umbrella policy with defendant State Farm, which provided $2 million in coverage. Weinstein was considered an additional insured under both polices, and after the accident, Weinstein and Schwartz filed claims with USAA and State Farm.

The primary carrier, USAA, processed Weinstein's claim first, and he then filed a claim with State Farm that exceeded the $2 million policy limit. Because Schwartz's claim was still being processed by USAA, Schwartz's attorney contacted State Farm to remind it that his client was also making a policy limit demand to State Farm and, therefore, he suggested that before State Farm paid Weinstein's claim, it should either withhold enough funds to also compensate Schwartz or interplead the $2 million to permit division between the competing claims. State Farm ignored the suggestion and

4

paid the entire limit to Weinstein on the basis that his claim was made first and thus State Farm could pay the claim under the policy.

Schwartz sued State Farm for breach of contract, and breach of the covenant of good faith and fair dealing, among other claims. The trial court granted State Farm's summary-judgment motion based, in part, on the theory that because the policy's limits were exhausted, State Farm "did not withhold any benefits due [to Schwartz], which is a necessary element of a claim for breach of the implied covenant of good faith and fair dealing." Id. at 1334. The Court of Appeal reversed. It acknowledged the principle, "stated in numerous cases, that breach of [the] covenant cannot occur if no benefits are due under the policy." Id. citing Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1151 (1990). But the court explained that the principle "has been applied *only* when there is no coverage, *and no potential coverage*, under the policy." Id. at 1339 (emphasis in original). In Love, for example, "no benefits were due because the Loves' claim to benefits was time-barred." Id. The court then continued:

> We reject the notion that, simply because a condition precedent to a particular obligation—the obligation to pay—has not yet occurred, the insurer is relieved from the implied covenants that inhere in every contract. State Farm and the Schwartzes had an insurance contract for which the Schwartzes paid premiums, and State Farm necessarily had contractual obligations to them, albeit contingent on future events, from the moment the parties entered into the contract. The implied duty not to impair the insured's right to benefits "arises from [the] contractual relationship existing between the parties," and indeed is "unconditional and independent of the performance of [the insured's] contractual obligations." (Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566, 577-578.)

Id. at 1336–1337.

Under Schwartz, Defendants' argument that Plaintiffs cannot recover bad-faith damages because no policy benefits are due lacks merit. Unlike Love, here, a *potential for coverage* existed when Plaintiffs tendered the claim to Defendants. (*MSJ Order* 7:16–18.) Although the condition precedent to Defendants' obligation to pay defense costs had not yet occurred, Defendants still had a duty of good faith and fair dealing

5

towards Plaintiffs regarding the duty to defend. Thus, notwithstanding that the deductible was not yet satisfied, Defendants could not refuse to defend Plaintiffs, who had paid millions in policy premiums, simply because Defendants felt Harris could not have it both ways by seeking workers compensation benefits and suing Plaintiffs.

Defendants next contend that Plaintiffs are not entitled to defense expenses and settlement costs as bad-faith damages under Hogan v. Midland National Insurance Company, 3 Cal.3d 553 (1970). (*Defs' Supp. Brief* 5:5–7.) In Hogan, Midland National Insurance Company issued a comprehensive liability policy to the insured, a manufacturer of wood processing machinery. When the insured was sued for selling a defective saw, Midland refused to defend contending the damages alleged in the lawsuit were not caused by an "accident," as required under the policy. After plaintiff obtained a judgment against the insured for various damages, the insured assigned its cause of action against Midland to plaintiff, who sued and recovered most of the damages included in the judgment. Midland then appealed, and the California Supreme Court rejected its interpretation of the term "accident" in the policy, and held it had a duty to defend and indemnify the insured for certain damages.

Relevant to this case, plaintiff argued that because Midland breached the duty to defend, it was liable for the entire judgment and could not deny coverage as to certain damage claims. The Court rejected the argument, citing Geddes & Smith, Inc. v. St. Paul-Mercury Indem. Co., 51 Cal.3d 558 (1959), which held that an insurer in the insurance-coverage case is not bound as to issues not necessarily adjudicated in the previous action, and thus could still present any defenses not inconsistent with the judgment against the insured. Id. at 564–565.

Hogan does not control the resolution of the present issue for two reasons. First, Hogan did not involve a bad-faith claim, nor did any of the cases Hogan cites in rejecting plaintiff's contention—Geddes, 51 Cal.3d 558, Bonfils v. Pacific Auto. Ins. Co., 165 Cal.App.2d 152 (1958), Ford v. Providence Washington Ins. Co., 151 Cal.App.2d 431 (1957), Lamb v. Belt Cas. Co., 3 Cal.App.2d 624 (1935)—involve bad-faith claims.

6

Thus, Hogan did not address the scope of damages for a bad-faith refusal to defend. See Campbell v. Superior Court, 44 Cal.App.4th 1308, 1316 (1996) ("It is well settled that 'the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts. [Citation.]'" Second, since Hogan, California and federal cases have recognized an insured's ability to recover defense costs and the judgment or settlement as damages where the insurer acts in bad faith in denying a defense, despite a lack of coverage under the policy. See Everett Associates Inc., 159 F.Supp.2d at 1210 ("where the failure to defend also violates the covenant of good faith and fair dealing, courts have generally held the insurer liable for the full settlement.")

In Mullen v. Glens Falls Ins. Co., 73 Cal.App.3d 163 (1977), Anthony Santos, an additional insured under a comprehensive personal liability policy issued by Glens Falls Insurance Company, was sued after breaking plaintiff's arm with a tire iron. Santos' insurance agent sent a notice of the lawsuit to Glens Falls stating that Santos "apparently got into a fight at [a] service station and [he] hit the service station attendant with a tire iron." Id. at 166. The agent explained that she did not know all the details, but that more could be learned from one of the attorneys. Id. at 167. Six days after receiving the notice, Glen Falls responded that the policy did not provide coverage because it did not cover acts "intentionally" caused by an insured. Id. Glen Falls made the determination based solely on the accident notice, without conducting any investigation. Eventually, a judgment was entered against Santos in the lawsuit based on the "intentional assault." Id. at 168. Santos then assigned his rights against Glens Falls to plaintiff.

In the insurance-coverage lawsuit that followed, the trial court found Glens Falls was not obligated to provide Santos a defense because the lawsuit was grounded on an intentional assault. The Court of appeal reversed. It began by explaining that California law requires an insurance company to defend any lawsuit brought against its insured which potentially seeks damages covered by the policy, and that the duty to defend is not "merely determined by looking to the language of the complaint filed against the insured

7

or the judgment entered in the injured party's lawsuit." Id. 169 (citing Gray v. Zurich Ins. Co., 65 Cal.2d 263, 265–277 (1966), Dillon v. Hartford Acc. & Indem. Co, 38 Cal.App.3d 335, 339 (1974)). Thus, although the judgment was based on an "intentional assault," the court found that when notice of the claim was given to Glens Falls, it was unclear whether the plaintiff started the fight and was struck by Santos in self-defense, which would have given rise to coverage under the policy. Id. at 170.[1]

Most important to this case, Glens Falls argued that under Dillon v. Hartford Acc. & Indem. Co., 38 Cal.App.3d 335 (1974), an insurance carrier "may assume the risk of refusing to provide its insured with a defense whenever it believes that the third party's lawsuit against the insured is based upon an act or occurrence which is not within the coverage of the policy, and that it incurs no liability for doing so unless it is later shown that liability, or potential liability existed under the policy." Id. at 172. Because the judgment and evidence in the insurance-coverage case showed Santos committed an intentional act, Glens Falls argued there never was any potential liability under the policy. Id. 172. The court rejected the argument. It explained that Dillon recognized the duty to defend "is not without limitation" in that it "extends only to the defense of those actions of the nature and kind covered by the policy." Id. (citation omitted.) Thus, "if the insurer, after taking into consideration facts gathered from its own investigation or information supplied by the insured, determined that there is not potential liability under the policy, it may refuse to defend the lawsuit..." without subjecting itself to liability unless it later developed that liability or potential liability existed under the policy. Id. 172–173 (citations omitted). But according to the Court of Appeal, the situation differs where the insurance company, "without making an investigation of any kind, den[ies] an insured a defense at a time when it has reason to believe that there is potential liability under the insurance policy, and then rel[ies] upon the results of the personal injury

---

[1] There were also allegations indicating that the policy's exclusion for an occurrence involving an automobile did not apply. Mullen, 73 Cal.App.3d at 170.

8

lawsuit and subsequent factors to prove that there was in reality no potential liability in the first instance[.]" In the latter situation, the Court of Appeal found that "public policy alone mandates" the insurance company is liable for the judgment,

> otherwise an insurance carrier could refuse to defend its insured on the slightest provocation and then resort to hindsight for the justification. Furthermore, a contrary holding would force the insured to finance his own investigation and the defense of the lawsuit, and then to seek reimbursement in a second lawsuit against the insurance company. This, in turn, could not only impose an undue financial burden on persons who have purchased insurance protection, but it could deprive them of the expertise and resources available to insurance carriers in making prompt and competent investigations as to the merits of lawsuits filed against their insureds. We simply reiterate the admonitions of the Supreme Court in Gray v. Zurich Insurance Co., supra, 65 Cal.2d 263, that an insurance company "... bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy" (at pp. 276-277), and that this duty does not dissolve "... simply because the insured is unsuccessful in his defense and because the injured party recovers on the basis of a finding of the assured's wilful conduct" (at p. 278).

Id. 173–174. Accordingly, despite the lack of coverage under the policy, the court remanded the case to the trial court to "take evidence solely on the issue of damages…, including the amount of the judgment in plaintiff's suit against Santos, and the costs, expenses and attorney's fees incurred in defending that lawsuit. Id. at 174.

Mullen stands for the proposition that where an insurance company fails to conduct an investigation and wrongfully denies the insured a defense (conduct that now supports a bad-faith claim), it is liable for the judgment against the insured, even if the judgment is not covered by the policy. Those are the allegations in this case. Plaintiffs contend that Defendants denied a defense after conducting minimal investigation into whether Janice Harris's injuries occurred within the scope of employment. (*Pls' Opp'n* 1:9–10, 23–25.) Under these circumstances, Mullen warned against allowing an insurer, such as Homeland, to resort to hindsight to justify the failure to defend, while forcing Plaintiffs to

9

15-CV-02747 W (MDD)

seek reimbursement after financing their own investigation and defense of the underlying lawsuit.[2]

Following Mullen, the California Court of Appeal in Amato v. Mercury Casualty Co., 53 Cal.App.4th 825, 830 (1997), held "that where an insurer tortiously breaches the duty to defend and the insured suffers a default judgment because the insured is unable to defend, the insurer is liable for the default judgment, which is a proximate result of its wrongful refusal to defend." Id. at 829, 832. The case recognized that contract damages are "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Id. at 831. Consistent with this rule, "[w]here an insured mounts a

---

[2] This Court recognizes that like Hogan, Mullen did not involve a bad-faith cause of action. This is likely due to California's delay in recognizing a bad-faith claim for breach of the duty to defend until 1996, nearly twenty years after Mullen was decided. See Campbell, 44 Cal.App.4th at 1321 (holding an insured can sue for breach of the implied covenant based upon the refusal to defend."). Therefore, more important than the shared absence of bad-faith claims is the distinction in terms of the type of wrongful conduct at issue. While none of the allegations in Hogan suggest the insurer acted unreasonably, the Mullen insurer's unreasonable failure to investigate would have supported a bad-faith cause of action under current California law. See Shade Foods, Inc. v. Innovative Products Sales & Marketing Inc., 78 Cal.App.4th 847, 879–880 (2000) ("Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim. '[T]he covenant of good faith and fair dealing implied in all insurance agreements entails a duty to investigate properly submitted claims .... [Citations].'") Because Mullen and this case involve similar allegations about the insurer's failure to investigate whether there was a potential for coverage, the Court finds Mullen persuasive.

One more point about Mullen bears addressing. At least one California Court of Appeal decision has disagreed with Mullen. In Yap v. Industrial Indemnity Co., 1993 WL 309598, Cal.App. 1 Dist. (Aug. 17, 1993), the court stated, "[t]o the extent that Mullen can be read for the proposition that the measure of damages for wrongful refusal to investigate and defend includes both the cost of the insured's defense and the amount of any judgment or settlement he or she was required to pay, it is wrong." Relying on Hogan, Yap found that where "the only breach found is a breach of the duty to defend, the harm suffered is the cost incurred by the insured to defend the third party suit. Settlement or judgment costs are not properly an element of compensable damage." This Court is not persuaded by Yap for at least three reasons. First, as discussed above, unlike Mullen, the insurer's conduct in Hogan did not rise to the level of bad-faith. The same is true of the insurer's conduct in Yap. Second, because the insurer's conduct in Mullen was more akin to bad faith, this Court does not interpret Mullen as supporting recovery of the judgment or settlement as damages for "only" a "breach of the duty to defend;" such damages would require a breach of the covenant of good faith and fair dealing. Third, as discussed later in this order, the Ninth Circuit has also followed Mullen.

10

defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of defense." Id. The court explained, however, that "[t]ort damage are 'the amount which will compensate for all the detriment proximately caused thereby, *whether it could have been anticipated or not*.'" Id. (emphasis added). Because the insured could not afford to mount a defense, the court reasoned that the insurer's wrongful refusal to defend led to the default judgment in the amount of $165,000. According to the court, "in these circumstances [the insurer] is liable for the judgment, which is the proximate result of its wrongful refusal to defend." Id. at 831.

Defendants contend Amato does not assist Plaintiffs for two reasons. First they attempt to distinguish Amato on the basis there was no deductible "so when the insurer refused to pay defense costs it was withholding policy benefits due." (*Defs' Supp. Brief* 5:15–17.) As an initial matter, the factual background in Amato does not indicate whether there was a deductible, so this purported distinction is unfounded. Regardless, Defendants' reliance on the lack of a deductible in Amato is misplaced because it is premised on Defendants' earlier contention that Plaintiffs cannot recover damages for bad faith because no policy benefits were due. As explained above, that premise lacks merit under Schwartz because there was a potential for coverage when Plaintiffs tendered the claim to Defendants.

Defendants also contend Amato is distinguishable because, here, Plaintiffs were represented by competent counsel. This Court agrees that Amato relied on the default judgment to justify holding the insurer liable for the judgment. But Amato also relied on Mullen, which as explained above supports Plaintiffs' damage claims. Moreover, although Amato is not on all fours with this case, it clearly contradicts Defendants' contention that an insured is not entitled to recover the judgment as damages where there is no coverage under the policy.

In Qualcomm Incorporated v. Industrial Indemnity Company, 2002 WL 386413, Cal.App. 4 Dist. (March 13, 2002), the California Court of Appeal again evaluated whether an insurer who breached the duty to defend was liable for a judgment not

11

covered under the policy. The twist in Qualcomm, however, was that although the insurer breached the duty to defend, another insurer provided the insured with a defense. The insured nevertheless argued that under Amato and Mullen, the insurer who breached the duty to defend was obligated to pay the judgment for the uncovered claim. The court disagreed. It explained that under Amato, "where the insurer tortiously refuses to defend and as a consequence the insured suffers a default judgment, the insurer is liable on the judgment and cannot rely on hindsight that a subsequent lawsuit establishes coverage." Id. at *6. The court then explained that in Mullen, the "insurer's refusal of a defense required the insured to retain counsel at his own expense." Id. Thus, although the judgment was based on an event not covered under the policy, Mullen "held the damages for breach of the duty to defend included the amount of the underlying judgment" because the "court was concerned that breaches of the duty to defend impose 'an undue financial burden on persons who have purchased insurance protection, and could deprive them of the expertise and resources available to insurance carriers in making prompt and competent investigations as to the merits of lawsuits filed against their insureds." Id. at 174. In contrast to the insureds in Amato and Mullen, the insured in Qualcomm "was not compelled or unable to defend itself in the underlying action." Id. * 7. Under "these circumstances," the court held the insurer's "breach of the duty to defend does not expose it to liability for the underlying judgment." Id. *7.

Qualcomm is important because it recognizes that Mullen and Amato are still good law, and stand for the proposition that an insurer is liable for the judgment if it's bad-faith refusal to defend either (1) leaves the insured without a defense in the underlying case or (2) the insured is required to use its own resources to defend itself. The later situation applies here because after Defendants refused to defend Plaintiffs, they were required to expend their own resources to defend the underlying case.

Finally, the Ninth Circuit has also found that despite a lack of coverage, an insured is entitled to seek defense and settlement costs as damages for bad faith under California law. In Pershing Park Villas v. United Pacific Insurance, 219 F.3d 895 (9th Cir. 2001), a

12

real-estate developer was sued by a homeowners association ("HOA") for construction defects. The developer tendered its defense to its insurer, who initially agreed to provide a defense under a reservation of rights. Four months before trial, the insurer withdrew its defense on the ground that the damages sought were not covered under the policy. The developer did not retain new counsel, and the HOA obtained a default judgment against it. The insurer refused to pay the judgment.

The developers and HOA both sued the insurer for breach of contract and bad faith, among other claims. Id. at 898. The developers sought the amount of the default judgment, plus consequential damages for emotional distress and other losses. Before trial, the district court granted the developer's motion for partial summary judgment on the ground the insurer breached its duty to defend, but continued the motion with respect to whether the insurer was liable for the entire judgment. Eventually, the district court also found the insurer was "liable for the entire default judgment as a consequence of its failure to defend developers." Id. at 898. At trial, the jury then found the insurer breached the duty of good faith and fair dealing. Id. at 899.

On appeal, the insurer argued that "the district court erred in holding that [the insurer's] bad faith rendered it automatically liable without any showing that the default judgment in the construction defect suit would not have been entered but for [the insurer's] wrongful conduct." Id. at 901. The Ninth Circuit rejected the argument, and found that it was "long-settled in California that 'an insurer that wrongfully refused to defend is liable on the judgment against the insured.' [Citations.]" Id. According to the Ninth Circuit, "[w]here the wrongful refusal to defend is unreasonable, it violates the covenant of good faith and fair dealing, and the insurer will be liable for consequential damages regardless of foreseeability. [Citations.]" Id. "It is no defense that the ultimate judgment against the insured is not necessarily rendered on a theory within the coverage of the policy. [Citations.]." Id.

Although Pershing Park also involved a default judgment, the Ninth Circuit's discussion does not limit the insurer's liability to cases involving a default judgment.

13

Rather, it interprets California law more broadly to allow an insured to automatically recover defense costs and settlement costs, regardless of a duty to indemnify, where there is a breach of the covenant of good faith and fair dealing. For all these reasons, the Court finds Plaintiffs are entitled to seek as damages their costs of defense and settlement if a jury finds Defendants breached the covenant of good faith and fair dealing in denying Plaintiffs a defense.

## II. CONCLUSION & ORDER

For the reasons set forth above, the Court **GRANTS** Defendants' motion with respect to damages under Plaintiffs' breach of contract cause of action, but **DENIES** the motion with respect to Plaintiffs' breach of the covenant of good faith and fair dealing cause of action [Doc. 41].

**IT IS SO ORDERED.**

Dated: November 15, 2017

Hon. Thomas J. Whelan
United States District Judge